UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Automobile Dealers Association, | Case No. 24-cv-4291 (KMM/DTS) |
| Plaintiff, | |
| v. | **ORDER** |
| Volkswagen Group of America, Inc., | |
| Defendant. | |

## INTRODUCTION

Plaintiff Minnesota Automobile Dealers Association (MADA) sues Volkswagen Group of America, Inc. (Volkswagen), alleging that Volkswagen is failing to reimburse Volkswagen dealers as required by Minnesota law. Volkswagen served document subpoenas on thirteen Minnesota Volkswagen dealers. MADA moves for a protective order directing Volkswagen to withdraw the subpoenas. For the reasons stated below, the motion is granted in part and denied in part.

## FACTS

### I. Background

Volkswagen is a manufacturer and distributor of Volkswagen motor vehicles. Compl. ¶ 16, Dkt. No. 1-2; Answer ¶ 16, Dkt. No. 16. Volkswagen dealers are dealerships that have entered into a franchise agreement with Volkswagen to sell and service Volkswagen brand vehicles. Answer ¶ 35. MADA is a trade association of Minnesota motor vehicle dealers, including Volkswagen dealers. Compl. ¶¶ 9, 11.

Dealerships ordinarily charge customers for nonwarranty repairs based on standardized time guides. *Id.* ¶¶ 36–37. *But see* Answer ¶ 37 (denying "that all

[Volkswagen dealers] always follow this practice]"). Standardized time guides provide estimates for how long particular repairs are expected to take. Compl. ¶ 38. In general, Volkswagen dealers charge customers an hourly labor rate multiplied by the amount of time a repair is estimated to take according to a standardized time guide, regardless of the time a technician spends repairing the vehicle. Compl. ¶ 37. An example is instructive. Consider a Volkswagen Jetta that is brought to a Volkswagen dealer to have a spark plug replaced. If the time guide used by the Volkswagen dealer estimates that it takes one hour to replace a spark plug, the Volkswagen dealer will charge the customer for one hour of work, regardless of whether a technician replaces the spark plug in fifteen minutes or two hours.

Dealerships do not charge customers for warranty repairs. Rather, manufacturers such as Volkswagen reimburse dealers for the cost of completing warranty repairs. Compl. ¶ 3. Historically, Volkswagen reimbursed dealers based on its own time guide. *Id.* ¶ 43. So, returning to the hypothetical spark-plug repair, if an independent time guide estimated that replacing a spark plug takes one hour, but Volkswagen's time guide estimated that replacing a spark plug takes thirty minutes, Volkswagen would (historically) reimburse the dealer for thirty minutes of work, regardless of whether the technician replaced the spark plug in fifteen minutes or two hours.

## II.   Minnesota Statute § 80E.041

Minnesota regulates motor vehicle sales and distribution. *See* Minn. Stat. Ch. 80E. Relevant here, Minnesota Statute § 80E.041, subdiv. 1, requires "[t]he manufacturer [to] compensate the new motor vehicle dealer for warranty service parts and labor required of the new motor vehicle dealer by the manufacturer," and § 80E.041, subdiv. 4,

2

establishes a statutory framework for calculating warranty labor reimbursement. *See* Minn. Stat. § 80E.041, subdiv. 4. In 2023, the Minnesota Legislature amended the statutory framework for calculating warranty labor reimbursement as follows:

> (a) Compensation for warranty labor must equal the dealer's effective nonwarranty labor rate multiplied by the time ~~allowances recognized by the manufacturer to compensate its dealers for warranty work~~ guide used by the dealer for nonwarranty customer-paid service repair orders. If no time guide exists for a warranty repair, compensation for warranty labor must equal the dealer's effective nonwarranty labor rate multiplied by the time actually spent to complete the repair order and must not be less than the time charged to retail customers for the same or similar work performed. The effective nonwarranty labor rate is determined by dividing the total customer labor charges for qualifying nonwarranty repairs in the repair orders submitted under subdivision 2 by the total number of labor hours that generated those sales. Compensation for warranty labor must include ~~reasonable~~ all diagnostic time for repairs performed under this section, including but not limited to all time spent communicating with the manufacturer's technical assistance or external manufacturer source in order to provide a warranty repair, and must not be less than the time charged to retail customers for the same or similar work performed.

2023 Minn. Laws, ch. 57, art. 4, § 4. To summarize, Minnesota amended the statute to require manufacturers to compensate dealers based on "the time guide used by the dealer for nonwarranty customer-paid service repair orders" rather than based on the manufacturer's time guide.

### III. The Complaint

MADA filed this lawsuit in October 2024, alleging Volkswagen was failing to comply with Minn. Stat. § 80E.041, subdiv. 4(a), as amended.[1] *See* Compl. MADA alleges that

---

[1] Although MADA filed this lawsuit in state court, Volkswagen promptly removed it to federal court. *See* Notice of Removal, Dkt. No. 1.

Volkswagen is "unilaterally imposing additional, unreasonable requirements on dealers seeking increased warranty labor compensation." *Id.* ¶ 47. According to MADA, Volkswagen requires dealers to provide the following information before processing a request for reimbursement: "(a) The month/year when the dealer began using the selected third-party time guide for retail repairs and, if it began using this third-party time guide for retail repairs on Volkswagen vehicles within the last 12 months, an explanation of the time guide that was previously used and the reason for changing to a new time guide; and (b) one hundred sequential nonwarranty, customer-paid repair orders closed during the four[] month period immediately preceding the request, each showing the labor time charged to the customer for the customer pay repairs and the actual time the technician(s) spent on the repair." *Id.* ¶ 48. MADA alleges that § 80E.041, subdiv. 4(a), "only requires the dealer to notify Volkswagen of the time guide it is using – nothing more." *Id.* ¶ 49.

In Count I, MADA seeks declaratory judgment under the Uniform Declaratory Judgment Act, Compl. ¶¶ 50–58, requesting a declaration that Volkswagen has violated § 80E.041. In Count II, MADA seeks injunctive relief under § 80E.17. *Id.* ¶¶ 59–64. MADA requests that Volkswagen be permanently enjoined from violating § 80E.041 by unlawfully imposing onerous conditions and refusing to use a dealer's time guide when reimbursing dealers for warranty repairs. *Id.* ¶ 63. MADA also seeks attorneys' fees, costs, and disbursements under § 80E.17.

4

**IV.   The Subpoenas**

Volkswagen issued an identical subpoena to each Volkswagen dealer. Def.'s Mem. in Opp'n 10, Dkt. No. 43; Galler Decl., Exs. B–N, Dkt. Nos. 35-2–35-14.[2] The subpoenas include twenty-eight document requests that can be grouped as follows:

- **Group 1: Time Guide Usage.** Volkswagen's Document Requests Nos. 5–10, 21–25, and 27 focus on what time guides Volkswagen dealers are using. These requests include, for example, "[a]ny Time Guide You use to calculate the amount You charge to customers for non-warranty repair work." Galler Decl., Ex. B at 8.

- **Group 2: Non-Warranty Customer Repair Orders.** Volkswagen's Document Requests Nos. 3–4 direct Volkswagen dealers to produce non-warranty, customer-paid repair orders and written estimates for repair orders. *Id.*

- **Group 3: The Statute.** Volkswagen's Document Requests Nos. 11–20 seek to test MADA's allegations regarding the 2023 amendment to § 80E.041, including alleged support for the amendment. These requests include, for example, "[a]ll Documents and Communications with any dealership or Dealer Associations regarding legislation affecting manufacturer reimbursement for warranty repair labor costs, including but not limited to the Warranty Reimbursement Statute." Galler Decl., Ex. B at 10.

- **Group 4: Financial Impact.** Volkswagen's Document Requests Nos. 26 and 28 seek information regarding the impact of the 2023 amendment on Volkswagen dealers' finances, including profit and loss statements.

- **Group 5: Other.** Volkswagen's remaining two requests are (1) "All Documents and Communications regarding this Action or the Complaint."; and (2) "Documents sufficient to show Your membership in the Minnesota Automobile Dealers Association." Galler Decl., Ex. B at 8.

MADA requests a protective order directing Volkswagen to withdraw the subpoenas. Pl.'s Mem. in Supp. 6, Dkt. No. 33.

---

[2] Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

5

## ANALYSIS

### I.  Legal Standard

Because the Volkswagen dealers are not parties, Volkswagen served subpoenas under Federal Rule of Civil Procedure 45. In response, MADA moves for a protective order under Federal Rule Civil Procedure 26(c). Rule 26(c)(1) permits courts to issue, for good cause, "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A showing of irrelevancy can satisfy Rule 26(c)'s good-cause standard. *Mallak v. Aitkin Cnty.*, No. 13-cv-2119, 2016 WL 9088760, at *9 (D. Minn. Dec. 22, 2016) (citing *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 238 (D. Minn. 2013)). The party seeking a protective order bears the burden of establishing good cause. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). If there is good cause to issue a protective order, the Court has broad discretion to limit or preclude discovery. *See* Fed. R. Civ. P. 26(c)(1)(A)–(H).

### II.  Groups of Document Requests

MADA argues that "[t]his case presents a straightforward question of statutory interpretation" and "[t]he facts are largely undisputed." Pl.'s Mem. in Supp. 5. Based on this premise, MADA contends the requested documents are irrelevant, disproportional to the needs of this case, and "solely intended to annoy and harass [Volkswagen dealers]." *Id.* at 6. Volkswagen counters that the requested documents are relevant to (1) whether Volkswagen dealers are using independent time guides and the interpretation of "use" in § 80E.041, subdiv. 4(a); (2) Volkswagen's unclean hands defense; and (3) testing the allegations in MADA's Complaint. Def.'s Mem. in Opp'n 17–22. The Court addresses

6

whether there is good cause to limit or preclude Volkswagen's five groups of document requests below.[3]

### A. Group 1: Time Guide Usage

Volkswagen's Group 1 requests focus on Volkswagen dealers' time-guide usage, addressing "which time guide dealers use with paying customers, how they selected it, and otherwise confirming they are in fact using it." Def.'s Mem. in Opp'n 17.

To start, the Court agrees with Volkswagen that its Group 1 requests seek documents relevant to its unclean hands defense. The Minnesota Supreme Court has "subscribe[d] to the maxim that 'he who seeks equity must do equity, and he who comes into equity must come with clean hands.'" *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 714 (Minn. 1985) (quoting *Johnson v. Freberg,* 228 N.W. 159, 160 (Minn. 1929)). According to the doctrine of unclean hands, a plaintiff "may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Id.* (quoting *Johnson*, 228 N.W. at 160). MADA does not dispute that it seeks equitable relief in the form of a permanent injunction. *See* Compl. at 12 (prayer for relief). Nor has MADA moved to strike Volkswagen's unclean hands defense, *see generally* Docket, and the Court declines to do so *sua sponte*. Volkswagen is entitled to discovery relevant to its unclean hands defense, and the requested documents could demonstrate that Volkswagen dealers' requests for warranty reimbursement were "improper, inaccurate, and fraudulent." Answer 19–20 (Affirmative Defense No. 2).

---

[3] Because MADA only challenges Volkswagen's document requests en masse, *see generally* Pl.'s Mem. in Supp., the Court declines to engage in a request-by-request analysis.

7

The requested documents also could be relevant to interpreting and applying the statute. Volkswagen's theory is that Volkswagen dealers are only entitled to reimbursement if they are actually using a particular time guide. *See* Answer 19 (Affirmative Defense No. 1). Volkswagen is concerned that Volkswagen dealers are selecting whatever time guide will result in the most reimbursement for a particular repair, regardless of what time guide they use in the ordinary course. Hr'g Tr. 25:21–26:5. By contrast, MADA's theory is that "[t]he Fair Reimbursement Statute only requires the dealer to notify Volkswagen of the time guide it is using – nothing more." Compl. ¶ 49. Understanding how Volkswagen dealers use time guides could provide helpful context when determining the meaning of "use" in § 80E.041, subdiv. 4(a). Moreover, if the Court were to reject MADA's interpretation of § 80E.041, subdiv. 4(a), the requested documents could assist in determining what time guides Volkswagen dealers are using and what steps (if any) Volkswagen may take to ascertain what time guide a Volkswagen dealer is using.

As to proportionality, MADA has not shown that producing the requested documents would be disproportionately burdensome to the needs of the case. The amount of money at issue is substantial. MADA brings this lawsuit on behalf of twelve Volkswagen dealers. Compl. ¶ 11. *But see* Pl.'s Mem. in Supp. at 5 (describing the thirteen subpoena recipients as every Volkswagen dealer in the state).[4] A Volkswagen dealer typically submits hundreds of warranty claims for reimbursement every year, and "[e]ach of those claims is often worth thousands of dollars." Notice of Removal ¶ 14.

---

[4] Whether MADA is bringing this lawsuit on behalf of twelve or thirteen Volkswagen dealers makes no difference to the outcome of its motion for a protective order.

8

According to Volkswagen, the permanent injunction sought by MADA will cost it millions of dollars. *Id.* ¶ 15. MADA offers little to balance the scales, arguing, in a conclusory manner, that "[t]he burden and expense of the proposed discovery outweighs any potential benefit." Pl.'s Mem. in Supp. 14. That is not enough—"[a] party claiming requests are unduly burdensome . . . must provide some evidence regarding the time or expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (quoting *Doe v. Nebraska*, 788 F.Supp.2d 975, 981 (D. Neb. 2011)). Moreover, undue burden "is a fact potentially best known to the party receiving the subpoena[.]" *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013). Therefore, the Volkswagen dealers, not MADA, are better situated to object if they believe the requests are unduly burdensome. Volkswagen has also represented that it will work with Volkswagen dealers in good faith to minimize the burden of complying with its document requests. Hr'g Tr. 21 (representing that "if a dealer comes to [Volkswagen] with a concern about the scope [of the subpoena], we're open to negotiating that"). MADA has not demonstrated good cause to limit or preclude Volkswagen's Group 1 requests.

  **B.** **Group 2: Non-Warranty Customer Repair Orders**

Volkswagen's Group 2 requests seek non-warranty, customer-paid repair orders and written estimates for repair orders. Because the requested documents are relevant to Volkswagen dealers' time-guide usage, the analysis for Group 2 follows Group 1. As already explained, the requested documents are relevant, *see* Supra, Part II.A, and MADA offers nothing more to demonstrate that the Group 2 requests are unduly burdensome, *see* Pl.'s Mem. in Supp. 14. MADA has thus likewise failed to demonstrate good cause to limit or preclude Volkswagen's Group 2 requests.

9

C.   **Group 3: The Statute.**

Volkswagen's Group 3 requests "seek documents relating to any efforts dealers made to lobby for the [2023 amendment to § 80E.041], . . . plus the labor agreements that might bear on union support." Def.'s Mem. in Opp'n 20. According to Volkswagen, "in a case interpreting a recently-passed Statute, what any lobbying dealers thought it meant or hoped it would accomplish is obviously discoverable." *Id.* at 20–21. That is not right.

When interpreting a statute, Minnesota courts begin with the plain language. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 210 (Minn. 2001).[5] When the statutory language is unambiguous, "it is assumed to manifest legislative intent and must be given effect." *Id.* "Further analysis is unnecessary 'if the intent of Congress is clear and unambiguously expressed by the statutory language at issue.'" *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 758 (Minn. 2010) (quoting *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.,* 550 U.S. 81, 93 (2007)). Minnesota courts only look to sources of legislative intent beyond the text when the statutory language is ambiguous. *Beardsley v. Garcia*, 753 N.W.2d 735, 737 (Minn. 2008). Therefore, if § 80E.041, subdiv. 4(a), is unambiguous, evidence of legislative intent will be superfluous.[6]

But even if § 80E.041, subdiv. 4(a), is ambiguous, the requested documents are unlikely to be helpful in ascertaining legislative intent. Traditional sources of legislative intent include statements made by legislators during committee hearings, *First Nat. Bank of Deerwood v. Gregg*, 556 N.W.2d 214, 217 n.3 (Minn. 1996); *Occhino v. Grover*, 640 N.W.2d 357, 362 (Minn. Ct. App. 2002) (same); statements made by legislators

---

[5] The Court will apply Minnesota law when interpreting § 80E.041 in this diversity case.
[6] The Court declines to weigh in on whether § 80E.041, subdiv. 4(a), is ambiguous at this time.

10

during floor debates, *Juntunen v. Carlton Cnty.*, 982 N.W.2d 729, 745 (Minn. 2022), a legislature's history of enacting and amending a statute, *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 719–20 (Minn. 2014); *Verhein v. Piper*, 917 N.W.2d 96, 104 (Minn. Ct. App. 2018) (same), and "the purpose of the law," *Scheurer v. Shrewsbury*, 24 N.W.3d 670, 679–80 (Minn. 2025). Volkswagen's Group 3 requests do not seek this type of information. Indeed, traditional sources of legislative intent are ordinarily publicly available. Rather, Volkswagen requests communications between Volkswagen dealers and others "regarding legislation affecting manufacturer reimbursement for warranty repair labor costs, including but not limited to the Warranty Reimbursement Statute." *See* Galler Decl., Ex. B at 9–10. It is not readily apparent, for example, how communications between Volkswagen dealers and media outlets might possibly be helpful in ascertaining legislative intent. At bottom, the Court is not persuaded that Volkswagen dealers' communications regarding legislation affecting manufacturer reimbursement for warranty repair labor costs or documents related to union support are relevant to interpreting § 80E.041, subdiv. 4(a).

Volkswagen counters that it seeks defensive discovery to test claims MADA made in its Complaint. Def.'s Mem. in Opp'n 20. According to Volkswagen, it offered to stipulate these issues out of the case, but MADA refused. *Id.* at 21. Volkswagen's position is reasonable. A court could conclude MADA opened the door to discovery on all allegations it elected to include in its Complaint. *See, e.g.*, Compl. ¶ 27 ("The Fair Reimbursement Statute enjoyed broad support not only from franchised motor vehicle dealers in Minnesota, but also unions representing technicians employed by Minnesota dealers."). But some of MADA's allegations are little more than inflammatory rhetoric or puffery that

11

do not weigh on the critical issues. Neither party meaningfully articulates why, for example, it matters whether labor unions supported the 2023 amendment to § 80E.041. And MADA concedes that the requested documents are irrelevant by moving for a protective order. Pl.'s Mem. in Supp. 10 ("[N]one of these categories of document requests have any relevancy to the sole issue in this case[.]").

To be clear, why the Legislature amended § 80E.041 could be relevant. *See* Minn. Stat. § 645.16 (permitting courts to consider, when a statute is ambiguous, "(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; [and] (4) the object to be attained"). But the Court is not persuaded that Volkswagen's Group 3 requests are likely to result in the production of documents relevant to the considerations identified by Minnesota Statute § 645.16. MADA has demonstrated good cause to preclude Volkswagen's Group 3 requests.

### D. Group 4: Financial Impact

Volkswagen's Group 4 requests direct Volkswagen dealers to "provide any documents relating to what they expected the Statute would mean for them financially . . . and financial statements to test those matters independently." Def.'s Mem. in Opp'n 21. Volkswagen claims that the requested documents are relevant to exploring MADA's potential damages and refuting MADA's allegation that Volkswagen is cheating dealers out of fair compensation. *Id.* at 21–22.

To start, this is not a damages case. MADA's only two counts are for declaratory judgment under the Uniform Declaratory Judgment Act and injunctive relief under Minnesota Statute § 80E.17. Compl. ¶¶ 50–64. MADA's prayer for relief does not include a request for damages. Compl. at 12 (prayer for relief). In its initial disclosures, MADA

12

states that it is not seeking damages "[a]t this time" but "reserves its right to seek damages as the facts of the case develop and the case proceeds." Def.'s Mem. in Opp'n, Ex. 2 at 4, Dkt. No. 43-2. At the motion hearing, MADA once again confirmed "[t]his is not a damages case" and that "MADA cannot -- is not seeking damages." Hr'g Tr. 10. Because MADA is not seeking damages, discovery regarding Volkswagen dealers' finances is irrelevant. MADA's reservation of rights does not change anything. If MADA were to request leave to amend the Complaint to seek damages, the Court would address the issue at that time.

As for Volkswagen's argument that it seeks defensive discovery, the Court is not persuaded. Although MADA alleges Volkswagen's practices "effectively cheat franchised dealers out of fair reimbursement for warranty repairs at fair market value for the labor used in the warranty repair," Compl. ¶ 4, Volkswagen does not articulate why discovery regarding Volkswagen dealers' finances is probative of this allegation. Regardless, Volkswagen's time-guide related requests offer sufficient discovery into the truth or falsity of MADA's allegation that Volkswagen's practices "effectively cheat franchised dealers." *See* Galler Decl., Ex. B at Request No. 5 (requesting the time guides Volkswagen dealers use). No. 21 (requesting documents related to the actual time technicians spent on repair work), No. 22 (requesting studies related to the accuracy of Volkswagen's time guide), No. 23 (requesting documents comparing Volkswagen's time guide with independent time guides), No. 24 (requesting documents comparing time guides "with technicians' actual time for repairs"), No. 25 (requesting documents related to the reasonableness of Volkswagen's time guide). MADA has demonstrated good cause to preclude Volkswagen's Group 4 requests.

13

### E.       Group 5: Other.

Two discovery requests remain: (1) "All documents and Communications regarding this Action or the Complaint"; and (2) "Documents sufficient to show Your membership in the Minnesota Automobile Dealers Association." Galler Decl., Ex. B at 8. The first request "is a standard request for all documents concerning this litigation." Def.'s Mem. in Opp'n 22. The second request seeks documents related to MADA's associational standing. MADA fails to address either request with specificity. *See generally* Pl.'s Mem. in Supp. Therefore, it has failed to demonstrate good cause to preclude or limit Volkswagen's Group 5 requests.

## III.      Attorneys' Fees

Volkswagen requests attorneys' fees under Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5). Def.'s Mem. in Opp'n 25–27. According to Rule 26(c)(3), "Rule 37(a)(5) applies to the award of expenses." Under Rule 37(a)(5), if a motion is granted in part and denied in part a court "**may** . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added). The Court declines to apportion expenses here.

14

**IT IS HEREBY ORDERED:**

1. Plaintiff Minnesota Automobile Dealers Association's Motion for a Protective Order (Dkt. No. 30) is **GRANTED** in part and **DENIED** in part as follows:

    A. The motion is **GRANTED** as to Document Requests Nos. 11–20, 26, 28; and

    B. The motion is **DENIED** as to Document Requests Nos. 1–10, 21–25, 27.

Dated: October 3, 2025
                                           s/ David T. Schultz
                                           DAVID T. SCHULTZ
                                           U.S. Magistrate Judge